UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SERGUEI SEROV,

Petitioner,

v.

RAUL MALDONADO, JR., *in his official capacity as Warden of the Metropolitan Detention Center, Brooklyn*; JUDITH ALMODOVAR, *in her official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement*; TODD BLANCHE, *in his official capacity as Attorney General of the United States*; MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; DAVID VENTURELLA, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*;

Respondents.

**TEMPORARY RESTRAINING ORDER**
26-CV-6597 (NRM)

**NINA R. MORRISON**, United States District Judge:

Petitioner Serguei Serov is a fifty-nine-year-old native of the former Soviet Union. He has lived in the United States for thirty-four years, and he has owned and operated a plumbing and heating business in Brooklyn for over twenty-one years. He has three children who reside in the United States. On September 24, 2026, he was arrested by Immigration and Customs Enforcement ("ICE") outside his home, as he was leaving for work that morning. He has remained in ICE custody ever since and is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

On October 14, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus (the "Petition"), ECF No. 1. He alleges that his detention violates his constitutional and statutory rights and seeks entry of an order directing his immediate release from detention. As set forth in the Petition, Petitioner was granted voluntary departure by an Immigration Judge ("IJ") on April 29, 1999. Pet. ¶ 35. *See also* Voluntary Departure Order ("VOD"), ECF No. 6-4. From his initial arrival to the United States until his arrest, Petitioner continuously resided in Brooklyn, New York. Declaration of Serguei Serov, ECF No. 10-1. Petitioner has no criminal convictions, Pet. ¶ 40, and had no contact from any immigration authorities from 1999 until the present arrest. Petitioner's Reply dated October 20, 2026 at 1, ECF No. 8.

This case was assigned to the undersigned on October 14, 2026, at which time the Court entered a jurisdictional order barring Respondents from transferring Petitioner "to a location outside this District, the Southern District of New York, or the District of New Jersey," without leave from the Court. Dkt. Order dated Oct. 14, 2026. The case was then reassigned to Judge Sanket J. Bulsara, who issued an Order to Show Cause directing Respondents to inform the Court of Petitioner's location and transfers, and to file a response to the Petition with any arguments why the writ should not be granted, by October 16, 2026 at 9:00 AM.

On October 16, 2026, Respondents filed their Response to the Order to Show Cause. ECF No. 6. Respondents assert detention authority under 8 U.S.C. § 1231(a), contending that Petitioner is subject to a final order of removal because he never

effectuated the IJ's Voluntary Departure Order from 1999. *Id.* at 1–2. Respondents contend that Petitioner's detention falls within a six-month presumptively reasonable period of detention following the issuance of a final order of removal, authorized by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 2–4. They also argue that the Court lacks jurisdiction to grant the Petition under 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9). *Id.* at 7–9.

Respondents attached various documents to their Response, including (1) a declaration from ICE Officer Mincheol So dated October 16, 2026; (2) the Voluntary Departure Order dated April 29, 1999; (3) Petitioner's eJusticeNY's Criminal Repository Inquiry; (4) an I-205 Form Warrant of Removal/Deportation citing INA provision 241(a)(1)(B), dated August 4, 2026; (5) an I-205 Form Warrant of Removal/Deportation citing INA provision 237(a)(1)(B), dated September 24, 2026; (6) various documents containing information for non-citizens ordered removed; and (7) an Initial Custody Determination form pursuant to the *Velasco* settlement, indicating completion on September 24, 2026 at 8:00 AM.

Four days later, on October 20, 2026, Petitioner filed a reply. ECF No. 8. He argues, *inter alia*, that the Court has jurisdiction over this action, and that Respondents lacked authority to arrest and detain him on September 26, 2026, because they failed to detain him at any time during the ninety-day removal period that followed when his order of removal became administratively final under 8 U.S.C. § 1231(a). With the reply, counsel for Petitioner also filed a sworn declaration by Petitioner, in which he provides further details regarding the circumstances of his

original entry into the United States and the issuance of his Voluntary Departure Order in 1999. In that declaration, Petitioner states, *inter alia*, that after entering the United States on a travel- and business-related visa in the early 1990s, he sought asylum because of fear of persecution by the Soviet and Russian governments due to his Jewish faith. ECF No. 8-1 at 1–2. He further asserts that while his asylum proceedings were pending, he was told by an attorney for the government that if he abandoned his claim for asylum and agreed to a voluntary departure, it would permit the parties to thereafter reach a "mutual agreement or compromise" that would allow him to remain in the United States. *Id.* at 2. However, even though Petitioner continuously and openly resided in and around Brooklyn, New York for the last twenty-six years, he states that he heard nothing from, and has had no further contact with, U.S. immigration authorities since the entry of his VOD in 1999. *Id.* at 2.

On October 21, 2026, the case was reassigned back to the undersigned for all further proceedings. That evening, the Court entered an Order directing Respondents to file a supplemental response to Judge Bulsara's Order to Show Cause by October 23, 2026 at 9:00 AM. The Court requested that Respondents specifically address (1) whether the instant case is distinguishable from the analysis of this Court's earlier decisions in *Diallo v. Lyons*, 837 F.Supp.3d 422 (E.D.N.Y. 2026) and *Garcia Tecu v. Mullin*, --- F.Supp.3d ----, No. 26-CV-5265 (NRM), 2026 WL 2655184 (E.D.N.Y. Sep. 9, 2026) and (2) whether, even if Respondents continue to respectfully disagree with the reasoning in those earlier decisions, Respondents believe there is

any need for a hearing or further briefing, subject to preservation of Respondents' arguments for appeal.

Respondents responded to the Court's order on October 23, 2026. ECF No. 10. In their supplemental response, Respondents noted that in their view, there are at least some factual differences between Petitioner's case and that of petitioners in *Diallo* and *Garcia Tecu*. Nevertheless, "Respondents acknowledge that, should the Court adhere to its prior analysis in those cases, because Petitioner here was detained years after the expiration of the ninety-day statutory removal period under 8 U.S.C. § 1231(a)(1), the Court would reach the same conclusion here." *Id.* at 2.

Upon review of the Petition, the accompanying exhibits, the applicable law, as well as Respondents' submissions acknowledging the parallels between this case and this Court's prior decisions in *Diallo* and *Garcia Tecu*, the Court finds that Petitioner has sufficiently demonstrated that he is likely to succeed on the merits of his claim that his detention is unlawful, and that he would suffer irreparable harm if temporary relief was not granted. For those reasons and the reasons that follow, the Court hereby issues a **TEMPORARY RESTRAINING ORDER** directing Respondents to release Petitioner from custody and enjoining Respondents from re-detaining Petitioner while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

Under Second Circuit law, a temporary restraining order is appropriate when a party can demonstrate: "(1) irreparable harm in the absence of an injunction pending resolution of the action; (2) either a likelihood of success on the merits OR

both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the emergency relief is in the public interest." *Iza v. Larocco*, No. 25-CV-6915 (NJC), 2025 WL 3712274, at *3 (E.D.N.Y. Dec. 22, 2025) (citing *Nat'l Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018)). "The movant must also show that the balance of equities supports the issuance of an injunction [or temporary restraining order]." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *see also Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019) ("The standards for a preliminary injunction and temporary restraining order are identical."). "When the government is a party to the suit, [a court's] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA*, 17 F.4th at 295 (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020)).

The Court here finds that Petitioner is likely to succeed on the merits of his claim that his detention violated his constitutional and statutory rights. Respondents assert that Petitioner was detained under 8 U.S.C. § 1231. As this Court and others within the Second Circuit have held, § 1231(a)(6) does not provide the government "a free-roaming right to arrest and detain people any time it sees fit" years after the issuance of an order of removal — it simply "provides for a period of *continued* detention for certain classes of people who have not been removed at the conclusion of the ninety-day removal period." *Diallo*, 837 F.Supp.3d 422 at 436 (quoting *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205–06 (S.D.N.Y. 2025) (emphasis in original)); *see, e.g.*,

*Garcia Tecu*, 2026 WL 2655184, at *3; *Singh v. Acting Field Off. Dir.*, No. 26-CV-4250 (AS), 2026 WL 1536877, at *1 (S.D.N.Y. June 1, 2026); *Parra v. Favro*, No. 26-CV-00363 (AMN), 2026 WL 1030870, at *4 (N.D.N.Y. Apr. 16, 2026) ("Section 1231(a)(6) does not provide [r]espondents the authority to detain [p]etitioner years after [an] In Absentia Order became final."); *Chen v. Noem*, No. 26-CV-1109 (AS), 2026 WL 380712, at *1 (S.D.N.Y. Feb. 11, 2026).

In that vein, the Court finds that Respondents are unlikely to succeed on the merits of their claim that, more than twenty-six years after Petitioner's order of removal became administratively final, the Supreme Court's decision in *Zadvydas* authorizes Petitioner's present detention. As the district court noted in *Diallo v. Joyce*, "*Zadvydas* dealt with a different question: how long following the ninety-day mandatory detention period can a person be detained under section 1231(a)(6) . . . . [I]n terms of when section 1231(a)(6) kicks in, the Court took as a given that it follows immediately after the ninety-day removal period." 817 F. Supp. 3d at 206–07 (citation modified).

Here, Respondents concede that far more than ninety days have elapsed since Serov's removal order became final in 1999.[1] *See* ECF No. 10 at 2. Respondents did

[1] Respondents assert that because Plaintiff did not depart as ordered, the Voluntary Departure Order effectively became a final order of removal, although they do not assert precisely when that occurred. ECF No. 6 at 1. For his part, Petitioner does not appear to dispute that at some point the VDO in fact became a final order of removal in light of Petitioner's failure to depart the United States. However, as Petitioner notes, it is unclear exactly when the removal order became administratively final — *i.e.,* whether that occurred on the date the VDO was issued (April 29, 1999) or after the expiration of Petitioner's deadline to depart (October 29, 1999). ECF No. 8 at 4; Voluntary Departure Order at ECF No. 6-4. Regardless, as

not detain him at any time during that ninety-day removal period; nor, on the present record, is there any indication that they even sought to locate him or detain him in the twenty-six years that elapsed between 1999 and his September 2026 arrest. Moreover, as Petitioner points out, there is no evidence that Petitioner was not available to ICE during those twenty-six years: he "never left New York and lived at the same address for the past 14 years." ECF No. 8 at 4.

The Court agrees with counsel for Respondents that there are at least some factual distinctions between the instant case and this Court's earlier decisions in *Diallo v. Lyons* and *Garcia Tecu v. Mullin*. But as Respondents have also conceded, *see* ECF No. 10 at 2, none of those distinctions warrant a different outcome here. That is, as Respondents note, were this Court to adhere to its analysis in those earlier decisions (which it does), the holdings of *Diallo* and *Garcia Tecu* are equally applicable in the instant case. Petitioner is therefore likely to succeed on the merits of his claim that his present detention, occurring twenty-six years after the expiration of his original ninety-day removal period under 8 U.S.C. § 1231(a)(1), is unlawful.

Accordingly, the Court finds that Petitioner has sufficiently shown a likelihood of success in establishing that his detention violates his constitutional and statutory rights, because Respondents lacked statutory authority to summarily arrest and detain Petitioner more than twenty-six years after the expiration of the ninety-day statutory removal period under 8 U.S.C. § 1231(a)(1).[2]

---

Petitioner contends (and as Respondents have not disputed), "on either date the 90-day removal period ran out more than 26 years ago." ECF No. 8 at 4.

[2] The Court further finds that Respondents are unlikely to succeed on their

The Court further finds a strong likelihood of irreparable harm if Petitioner is not released from his current detention. "There is no question that detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Iza*, 2025 WL 3712274, at *8 (quoting *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 595–96 (W.D.N.Y. 2025)). Additionally, Petitioner asserts that his detention violates his constitutional rights. Pet. ¶¶ 68–75, 78–83. The constitutional aspect of his claims increases the likelihood that he faces irreparable harm if not released from his current detention. *See Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (holding that a district court's finding that a plaintiff is "substantially likely to demonstrate a violation" of constitutional rights "serve[s] as an independent basis for the [] conclusion that the plaintiff would suffer irreparable harm in the absence of preliminary injunctive relief").

Finally, the Court has weighed the factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which sets forth the test that courts in the Second Circuit will apply when determining "the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, No. 25-CV-6137, 2025 WL 2630826, at *12

---

contention that this Court lacks jurisdiction to grant Petitioner relief. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (citation modified)); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (noting that 8 U.S.C. § 1252(g) "applies only to three discrete actions that the Attorney General [or Secretary of Homeland Security] may take: [his] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders'"); *see also Zhang v. Genalo*, 814 F. Supp. 3d 307, 320. (E.D.N.Y. 2025).

(S.D.N.Y., Sep. 12, 2025). Having considered (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail, *see Mathews*, 424 U.S. at 335, the Court finds that the balance of interests weighs heavily in favor of Petitioner's immediate release from detention.

In weighing these interests, the Court notes that Petitioner has lived in the United States for more than thirty years. Petitioner has attested that he cares for and provides the primary financial support for his three teenage children, through the heating and plumbing business he has operated for twenty-one years. ECF No. 8-2 at 2. In these thirty-four years, Petitioner has never been convicted of a crime. On the present record, it appears that his first and only arrest occurred in August 2026, when he agreed to come to the police station to answer questions about what he describes as a verbal dispute with his former partner at their son's birthday dinner two days earlier, at which time he was arrested and spent one night in jail. ECF No. 8-1 at 3–4. However, he has provided the Court with a copy of an email from the Kings County District Attorney dated October 19, 2026, confirming that the Office intends to dismiss all charges against him arising from that incident. *See* ECF No. 8-2. The Court likewise finds that the public interest weighs in favor of this Temporary Restraining Order. *See We The Patriots*, 17 F.4th at 295; *Iza*, 2025 WL 3712274, at *8 ("Freedom from unlawful detention is undoubtedly within the public's interest.").

It is hereby:

**ORDERED**, that Respondents must release Petitioner from custody no later than **10:00 A.M. on Saturday, October 24, 2026**. Respondents, through counsel, shall file a letter on the docket no later than **1:00 P.M. on Saturday October 24, 2026**, confirming that Petitioner has been released from custody, and shall send a courtesy copy of that letter by electronic mail to morrison_chambers@nyed.uscourts.gov and to Petitioner's counsel at the email address listed in the Petition.

Respondents are **ENJOINED** from re-detaining Petitioner, absent prior authorization of this Court, while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

The foregoing **Temporary Restraining Order** shall expire on **November 6, 2026 at 2:00 P.M.** unless it is extended by further Order of this Court for good cause shown or otherwise. *See* Fed. R. Civ. P. 65(b)(2).

The Court will issue a separate scheduling order for further briefing and proceedings on the merits of the petition, if necessary.

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: October 23, 2026 at 6:00 P.M.
Brooklyn, New York